John" J. Walsh, J.
Defendant-appellant was convicted of speeding upon an information which charged that he wrongfully and unlawfully “ did operate a motor vehicle hearing New York State registration LE 23-41, on and about the public highways of the City of Borne, New York, particularly in the vicinity of Boute 26 (Turin Boad) in a duly erected and maintained 30 mile per hour speed zone in excess of 30 miles per hour, to wit: 50 miles per hour. ’ ’
Defendant-appellant does not disagree with the finding of speed but challenges the judgment upon the question of the erection of the signs.
In proving the erection and maintenance of the signs, the People called as a witness Captain Clarence L. Frank of the Borne Police Department who testified that there was erected on Turin Boad at the boundary line between the City of Borne and the Town of Lee a speed sign reading “ City of Borne. 30 miles per hour.” There appears to be no question that this sign was properly erected.
Captain Frank then went on to testify that approximately 800 feet inside the city line and southerly thereof there was another speed sign; a third sign southerly of Lorena Boad was approximately 1,500 feet from the second sign; a fourth sign southerly of the intersection of Williams Boad was approximately one-half mile from the third sign and 800 feet north of Alleman’s grocery where defendant was stopped. The court takes judicial notice that one half of a mile is 2,640 feet in length.
Captain Frank further testified that from the fourth sign there were three additional signs southerly to what is called the “ inside district ” of the City of Borne which were spaced at the following respective distances apart: 1,500 feet; 2,200 feet; 2.200 feet; and 2,400 feet.
Although not material to the issue of notice to the defendant in this case, Captain Frank was permitted to testify as to the signs erected on the easterly side of Turin Boad in the opposite direction from which defendant was traveling. He testified that from the so-called “ inside district ” line to the Town of Lee, the signs were spaced as follows: 800 feet; 2,000 feet; 2,600 feet; 2,700 feet; 2,000 feet; 2,200 feet; 2,200 feet; and 2.200 feet to the “ End of Speed Zone ” sign at the Town of Lee.
The police captain testified that all these signs were erected in accordance with the Manual of the New York State Traffic Commission (see N. Y. Off. Comp, of Codes, Bules & Begula *937 tions, p. 1200 [Fourth Off. Supp.]) which requires: “A Begin (R5) sign shall be erected on the right side of the highway at the beginning of the speed restriction. An intermediate (R5) sign shall be erected on the right side of the highway approximately 1000 feet beyond the Begin sign. The purpose of this sign is to warn motorists who have missed the first sign. Additional Intermediate signs as needed and depending upon the length of the speed restriction, shall be placed at distances no greater than 3,000 feet apart. An End (R 6 or R 7) sign shall be erected on the right side of the highway at the end of the speed restriction.”
Viewed in the light of this provision, the signs were properly placed and within the designated distances. The trouble is that such rules applied only to speed restrictions established by the State Traffic Commission under section 95-c (now § 1620) of the Vehicle and Traffic Law, and applied only to State highways outside of cities or incorporated villages.
Defendant-appellant takes the position that the signs posted were in contravention of section 54 of the Vehicle and Traffic Law in effect at the time. Insofar as pertinent here, this section read: “ if a speed limit affects only a specified street or highway, signs spaced not more than fifteen hundred feet apart, indicating the speed limit shall be placed conspicuously on each side of each such highway, bearing the name of the street or highway or the touring route number of such street or highway and the number of miles per hour permitted ”.
There is no doubt that defendant-appellant was apprehended within the territorial limits of the City of Rome under an ordinance of the Common Council of that city.
Under the Charter of the City of Rome (§ 4; L. 1921, ch. 679, as amd.) the city is divided into two districts: one, composed of the more closely settled portions of the city, known as the “Corporation Tax District”; the other to be known as the “ Outside District.”
The defendant-appellant was arrested for speeding in the “ Outside District ”, but this fact is material only in determining the effect of section 54 of the Vehicle and Traffic Law.
The Attorney-General on December 24, 1946 (1946 Atty. Gen. 327) held that while that portion of the City of Rome outside of the corporation tax district had all of the attributes of a town in the County of Oneida, nevertheless this area is a portion of the corporation of the City of Rome and the State Traffic Commission might not regulate speed on State highways within the so-called “ Outside District.”
*938 The Common Council of the City of Rome then passed Ordinance 797 effective September 21, 1948 establishing 30-mile zones throughout the “ Outside District ” along Turin Road; along North James Street, East Dominick Street, RomeOriskany Road, South James Street including both Routes 26 and 365 beyond their junction at the Rome State School. This ordinance established also 20-mile zones in the Village of Stanwix, Upper Floyd Avenue from the city line to the Griffis Air Force Base and on Jervis Avenue from the inner city line to its junction with West Thomas Street.
The ordinance does state that suitable signs in accordance with section 54 of the Vehicle and Traffic Law should be erected, but it is obvious that this refers to locations where speed zones change within the city which it not material here.
The People claim that the purpose of the Ordinance 797 was not to control the speed along a specified street or highway within the meaning of section 54 of the Vehicle and Traffic Law, but to provide generally for a speed zone of 30 miles per hour along the main avenues providing exit and ingress routes for the City of Rome proper. This general speed zone established covered substantially all of the main roads and highways in the outside corporation tax district where speed limits previous to the ordinance passed in 1948 were subject to the control and regulation of the State Traffic Commission.
To rule that signs which complied with Rules and Regulations of the State Traffic Commission and gave sufficient notice to a driver at that time became insufficient merely because they were replaced by a Common Council ordinance is illogical.
The defendant had notice of the 30-mile-per-hour zone when he left the Town of Lee. He had a second warning 800 feet inside the city limits; a third warning 1,500 feet further. The mere fact that his fourth warning was more than 1,500 feet distant should not legalize his speed at that point. He paid no attention to this warning either. In the opinion of the court he had sufficient notice of the speed limit. The officer testified he followed him for two miles and the court can take judicial notice from the testimony as to the location of the signs that defendant was arrested over a mile southerly of the city line.
Upon the record, the court finds that there was substantial compliance with the requirements of section 54 of the Vehicle and Traffic Law. (See People v. Lathrop, 3 N Y 2d 551, 553.) Judgment of conviction affirmed.